```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| BEATRICE FERNANDES,<br><br>            Plaintiff,<br><br>   v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, HUBZU USA, INC., and REALHOME SERVICES AND SOLUTIONS, INC.,<br><br>            Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>    Civil Action<br>No. 15-6928 (JBS/KMW)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

This action concerns a dispute over the online auction (and ultimate purchase) of real property in North Wildwood, New Jersey, and arises out of Plaintiff Beatrice Fernandes' (hereinafter, "Plaintiff") contention that Defendant Deutsche Bank National Trust Company (hereinafter, "Deutsche Bank") awarded the winning bid to a third-party, despite Plaintiff's significantly higher offer. (See generally Compl. at ¶¶ 5-16.) Based upon her belief that this action touches and affects title to the beach property, Plaintiff filed and recorded a notice of *lis pendens* in the Superior Court of New Jersey, together with a three-Count Complaint for consumer fraud, common law fraud, and promissory estoppel. (See generally id.)

Following removal to this federal Court, Defendants now move to strike the *lis pendens* and to transfer this New Jersey-

centric litigation to the Northern District of Georgia. [See Docket Items 9 & 10.] Defendants claim, in particular, that the *lis pendens* must be striken, because Plaintiff cannot demonstrate the necessary underlying property interest (see Defs.' *lis pendens* Br. at 6-10), and that this action must be transferred on account of the forum selection clause contained within the Terms and Conditions of the online auction site. (See Defs.' Transfer Br. at 4-11.) Plaintiff, by contrast, takes the position that she claims an interest in the disputed property that requires continuation of the *lis pendens* (see Pl.'s *lis pendens* Opp'n at 4-6), and that the forum selection clause has no application to this litigation. (See Pl.'s Transfer Opp'n at 3-5.)

The relatively straightforward issues presented by the pending motions are whether Plaintiff's Complaint contains causes of action that affect title to the disputed property; whether a valid and enforceable forum selection clause governs the parties' relationship; and whether, in light of a forum selection clause or not, the applicable considerations under 28 U.S.C. § 1404(a) favor the transfer of this action to the Northern District of Georgia.

For the reasons that follow, Defendants' motion to strike the *lis pendens* will be granted, and their motion to transfer will be denied. The Court finds as follows:

1.  **Factual and Procedural Background**.[1]  On June 13, 2015, Deutsche Bank listed a property in North Wildwood, New Jersey (hereinafter, the "property") for auction on an online real estate marketplace, HUBZU, through REALHome Services and Solutions, Inc. (hereinafter, "REALHome").  (See Compl. at ¶¶ 5-7.)  Following the listing, Plaintiff's New Jersey real estate agent, David Shapiro, contacted HUBZU to express interest in the property, and "began talks" with REALHome agent David Sweeney.  (Id. at ¶¶ 8-9.)  During these "talks," Mr. Shapiro relayed to Mr. Sweeney that Plaintiff had "deposited" funds "into an escrow account" in connection with her $300,000 offer for the property.  (Id. at ¶¶ 12.)  Mr. Sweeney allegedly responded that "a bid [of] around 93% of [the] asking price of $347,000 would be acceptable," and Plaintiff, in turn, "made another offer of $322,000" prior to the end of the bidding period on August 13, 2015.  (Id. at ¶¶ 12-14.)  Nevertheless, on August 13, 2015, Mr. Shapiro received an email from HUBZU stating that, at the end of bidding, the property had sold to a third-party for "the Highest Bid" of $281,000.  (Id. at ¶ 16.)

2.  Based upon her belief that she had an agreement to purchase the property at the "highest price," Plaintiff brought

---

[1] For purposes of the pending motions, the Court accepts as true the version of events reflected in Plaintiff's Complaint.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

this action against Defendants, asserting claims for consumer fraud, common law fraud, and promissory estoppel.[2] (Id. at ¶¶ 17-33.) Although dressed in different terms, each claim seeks identical relief, "[s]pecific [p]erformance and damages against Defendants in the form of" an order requiring Deutsche Bank to sell the property to Plaintiff. (Id.) Plaintiff then filed and recorded a notice of *lis pendens*, and after removal,[3] the pending motions followed.[4]

3. **Standard Governing Defendants' Motions to Strike Plaintiff's notice of *lis pendens***. At common law, the filing of a lawsuit alone provided constructive notice to any subsequent purchaser or lienholder of a pending contest concerning title to the property. See Manzo v. Shawmut Bank, N.A., 677 A.2d 224, 227 (N.J. Super. Ct. App. Div. 1996). New Jersey's *lis pendens* statute, N.J.S.A. §§ 2A:15-6 to 15-17, "altered this rule by requiring that a notice of *lis pendens* be filed and recorded for subsequent interest takers to have constructive notice of the pendency of a lawsuit and to take subordinate to the rights the

---

[2] Plaintiff's consumer fraud claim arises under New Jersey's Consumer Fraud Act, N.J.S.A. §§ 56:8-1 to -197 (hereinafter, the "NJCFA"), while her remaining claims rely upon common law. (See generally Compl.)
[3] Defendants removed this action on September 17, 2015. [See Docket Item 1.]
[4] On November 2, 2015, the Court denied Defendants' request for expedited disposition of the pending motion, but resolved to decide the motions promptly. [See Docket Item 14.]

plaintiff derives in the outcome of the litigation." Id. (citations omitted).  In other words, the *lis pendens* itself now provides "constructive notice" that interested parties take the property subject to the outcome of the litigation.  Id. (citations omitted); see also N.J.S.A. §§ 2A:15-7.  The statutory basis for the grant of a notice of *lis pendens*, in turn, states that,

> In every action, instituted in any court of this State having civil jurisdiction or in the United States District Court for the District of New Jersey, the object of which is to enforce a lien upon real estate or to affect the title to real estate or a lien or encumbrance thereon, plaintiff or his attorney shall, after the filing of the complaint, file in the office of the county clerk or register of deeds and mortgages, as the case may be, of the county in which the affected real estate is situate, a written notice of the pendency of the action, which shall set forth the title and the general object thereof, with a description of the affected real estate. No notice of *lis pendens* shall be filed under this article in an action to recover a judgment for money or damages only.

N.J.S.A. 2A:15-6 (emphases added).  In considering whether the object of an action "'affects title to real property,'" courts "look only to the underlying complaint." Pharmacia Corp. v. Motor Carrier Servs. Corp., No. 04-3724, 2006 WL 2792793, at *3 (D.N.J. Sept. 26, 2006) (citations omitted and emphasis in original).  Courts then determine whether the allegations of the complaint demonstrate "a probability that [a] final judgment will be entered in favor of the plaintiff sufficient to justify

5

the continuation of the *lis pendens*."[5]  Gage v. Wells Fargo Bank, N.A. AS, No. 12-777, 2013 WL 3443295, at *6 (D.N.J. July 9, 2013) (citation and internal quotation marks omitted), aff'd, 555 F. App'x 148 (3d Cir. 2014).  Stated differently, courts "'weigh the strengths of [the] plaintiff['s] case against the detriment imposed on [the] defendant by reason of the filing of the notice of *lis pendens*.'"  Stephen N. Frankel Real Estate, Inc. v. Merrett, No. A-1547-09T2, 2011 WL 1085531, at *4 (N.J. Super. Ct. App. Div. Mar. 25, 2011) (citation omitted).

    4.    As explained above, the crux of this action concerns Plaintiff's contention that Deutsche Bank improperly named a third-party the highest bidder for the property, despite her higher-dollar-value offer.  (See generally Compl. at ¶¶ 5-16.)  As a result, Plaintiff argues that her fraud and promissory estoppel claims "'affect the title'" of the property, because she seeks relief in the form of specific performance.  (Pl.'s *lis pendens* Opp'n at 4.)  More specifically, she seeks to

---

[5] For that reason, the Court disregards, as it must, much of the series of documents appended to Plaintiff's opposition.  See Pharmacia Corp., 2006 WL 2792793, at *3 (emphasis in original and citations omitted) (explaining that, in assessing the propriety of a *lis pendens*, "courts may look only to the underlying complaint"); Polk v. Schwartz, 399 A.2d 1001, 1004 (N.J. Super. Ct. App. Div. 1979) ("upon a motion to cancel or discharge a Lis pendens, the court may not consider anything other than whether the complaint sufficiently states a cause of action to impress a trust").

require Deutsche Bank to sell her the property as the highest bidder (see Compl. at ¶¶ 17-33), and argues that the nature of this desired relief requires continuation of the *lis pendens*. (See Pl.'s *lis pendens* Opp'n at 4.)

5.   Nevertheless, specific performance constitutes exclusively a contractual remedy, and can only be invoked to address a breach of a valid and enforceable agreement.  See, e.g., Estate of Cohen, ex rel. Perelman v. Booth Computers, 22 A.3d 991, 1001 (N.J. Super. Ct. App. Div. 2011) (citation omitted); Houseman v. Dare, 966 A.2d 24, 27 (N.J. Super. Ct. App. Div. 2009) (citations omitted); Marioni v. 94 Broadway, Inc., 866 A.2d 208, 214 (N.J. Super. Ct. App. Div. 2005) (citation omitted).  For that reason, Plaintiff's promissory estoppel claim, a quasi-contractual theory of liability, provides the only basis for an award of specific performance. See Del Sontro v. Cendant Corp., Inc., 223 F. Supp. 2d 563, 574 (D.N.J. 2002).  This claim, in turn, constitutes the only claim that arguably affects title to the property (as opposed to simply entitling Plaintiff, if successful, to monetary damages).[6]

---

[6] Plaintiff's claims for common law fraud and statutory consumer fraud, by contrast, rely solely upon allegedly unconscionable conduct and business practices, but not any agreement. (See Compl. at ¶¶ 17-26.)  Even more critically, these claims enable an aggrieved party to recover only monetary damages, see, e.g., Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC, 945 F. Supp. 2d 543, 552 (D.N.J. 2013) (citation omitted) ("Damages under the [CFA] are limited to 'ascertainable loss' and

7

6. A claim for promissory estoppel, in turn, requires clear and convincing proof of "'1) <u>a clear and definite promise</u>; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance [upon the clear and definite promise]; and (4) definite and substantial detriment.'"[7] <u>Nye v. Ingersoll Rand Co.</u>, 783 F. Supp. 2d 751, 766 (D.N.J. 2011) (emphasis added) (quoting <u>Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cnty. of Burlington</u>, 944 A.2d 1, 19 (N.J. 2008)).

7. Here, however, the Court need not belabor these elements, because Plaintiff's Complaint demonstrates no sufficiently "'clear and definite'" promise to sell the property, nor any qualifying detriment. <u>Id.</u> (citation omitted).

---

encompass only economic losses."); <u>Gennari v. Weichert Co. Relators</u>, 691 A.2d 359, 369 (N.J. 1997) (finding "non-economic losses" not recoverable under the NJCFA), and New Jersey law plainly prohibits the filing of a *lis pendens* for that sort of recovery. <u>See</u> N.J.S.A. § 2A:15-6; <u>see also</u> <u>Pharmacia Corp.</u>, 2006 WL 2792793, at *2 (citations and internal quotation marks omitted) ("the courts of the state of New Jersey have unequivocally held that a *lis pendens* may not be filed in an action to recover a judgment for money or damages only"). For these reasons, the Court finds no support for the notion that the *lis pendens* could rest upon Plaintiff's fraud-based claims. Nor, for that matter, has Plaintiff identified any, and instead appears to concede quite the opposite. (<u>See</u> Pl.'s *lis pendens* Opp'n at 4-6 (referencing only Plaintiff's promissory estoppel claim).)

[7] Because this action concerns the transfer/sale of real estate, the traditional promissory estoppel elements must be viewed through the lens of New Jersey's Statue of Frauds, which requires "clear and convincing evidence" of an oral agreement to sell real property. N.J.S.A. § 25:1-13; <u>see also</u> <u>On the Hill Realty, LLC v. Kelly</u>, No. SOM-C-12016-05, 2005 WL 1252340, at *3 (N.J. Super. Ct. Ch. Div. Apr. 29, 2005) (same).

8

8. Indeed, as to the existence of a promise, Plaintiff alleges only that the REALHome agent, Mr. Sweeney, "indicated to Plaintiff's agent[, Mr. Shapiro,] that a bid around 93% of asking price of $347,000 would be acceptable," and that Plaintiff, in turn, "made another offer of $322,000 prior to the bidding period end on August 13, 2015."  (Compl. at ¶¶ 13-14 (emphasis added).)  The actual communications that underlie these allegations, however, reflect that Mr. Sweeney stated only that a 93% bid would "likely do it," impliedly acknowledging the uncertainty.  (Ex. A to Shapiro Aff.)

9. These circumstances reflect little more than an ongoing exchange of indefinite promises, and therefore fall far short of a probable showing of a "'clear and definite'" promise by Defendants to sell the property to Plaintiff at a specific price.  Nye, 783 F. Supp. 2d at 766 (citation omitted); see also Del Sontro, 223 F. Supp. 2d at 574 (citations omitted) (finding that "indefinite promises ... cannot give rise to a claim for promissory estoppel"); Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 395 A.2d 222, 230 (N.J. Super. Ct. App. Div. 1978) (defining a clear and definite promise as the "*sine qua non*" for the applicability of promissory estoppel).  Nor do these allegations render it probable that Plaintiff will overcome the "clear and convincing" hurdle

9

imposed by New Jersey's Statute of Frauds.  See N.J.S.A. § 25:1-13.

10.  Aside from these deficiencies, Plaintiff's allegations do not suggest that she suffered a definite and substantial detriment.  (See generally Compl.)  Rather, the Complaint only states, in conclusory fashion, that Defendants' alleged conduct proved "detrimental" (Compl. at ¶ 32), presumably because she missed out on the opportunity to purchase "the unique piece of [foreclosed] property."[8]  (Pl.'s lis pendens Opp'n at 6.)  As presently alleged, this detriment appears to lack the substantiality required for purposes of a meritorious promissory estoppel claim.

11.  In view of these issues, the Court cannot conclude that Plaintiff's Complaint demonstrates a probability of success sufficient to allow her to unilaterally cloud title to the property, particularly given Defendants' representation that an innocent bidder/purchaser remains waiting in the wings.  As a result, Defendants' motion to strike the lis pendens will be granted, and the lis pendens will be discharged without prejudice.[9]  See Pharmacia Corp., 2006 WL 2792793, at *3

---

[8] The Court culls this presumed detriment from Plaintiff's briefing, because her Complaint itself provides no detail on the issue of detriment.

[9] Even upon review of the documents attached to Plaintiff's opposition (which consist mostly of emails between Mr. Shapiro and Mr. Sweeney), the Court has serious doubts concerning

(discharging an "improper" *lis pendens* without prejudice); Gage, 2013 WL 3443295, at *6 (same); Jackson v. Manasquan Sav. Bank, 638 A.2d 165, 170 (N.J. Super. Ct. Ch. Div. 1993) (discharging a *lis pendens*, where the court found little merit to the plaintiffs' claim for specific performance). The Court next addresses Defendants' motion to transfer.

12. **Standard Governing Defendants' Motion to Transfer**. 28 U.S.C. § 1404(a) permits the Court to transfer an action to another District where it could originally have been brought. Here, however, the existence of an allegedly applicable and binding forum selection clause motivates Defendants' motion to transfer. See Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tx., ___ U.S. ____, 134 S.Ct. 568, 580 (2013) (noting that a motion to transfer constitutes the appropriate mechanism to enforce a forum selection clause). For that reason, the Court must first examine the applicability and enforceability of the forum selection clause, prior to addressing its impact, if any, upon the traditional transfer analysis.

---

whether any amount of pleading supplementation and/or discovery will add life to Plaintiff's promissory estoppel claim. (See Ex. A to Shapiro Aff.) Indeed, certain of these documents appear to run contrary to Plaintiff's theories. (See generally id.) Nevertheless, the Court leaves open the possibility that additional evidence may bring into focus the basis, if any, for Plaintiff's promissory estoppel claim.

13. **Applicability and Enforceability of the Forum Selection Clause**. Robust authority has endorsed the enforcement of forum selection clauses, unless the clause resulted from fraud, violates public policy, or requires resolution in a seriously inconvenient forum. See, e.g., M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202 (3d Cir. 1983), overruled on other grounds by, Lauro Lines v. Chasser, 490 U.S. 495 (1989); MoneyGram Payment Sys. v. Consorcio Oriental, S.A., 65 F. App'x 844, 846 (3d Cir. 2003). Application of this endorsement, however, necessarily requires that the underlying agreement govern the parties' dispute. As a result, courts routinely decline to apply forum selection clauses, where the subject of the dispute did not arise from the contract containing the clause. See, e.g., Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 293 (3d Cir. 1994) (refusing to apply a forum selection clause from one contract between the parties to a dispute arising out of a second contract); Jayson Co. v. Vertical Mkt. Software, No. 05-3883, 2006 WL 1374039, at *4 (D.N.J. May 18, 2006) (same); Toner v. Miller, No. 03-3498, 2003 WL 22358446, at *1 (E.D. Pa. Sept. 8, 2003) (same).

14. Here, Defendants argue that the forum selection clause of HUBZU's "Terms and Conditions" govern this action, because Mr. Shapiro, Plaintiff's real estate agent, registered to use

12

HUBZU and therefore "accepted the Terms and Conditions" on Plaintiff's behalf. (Defs.' Transfer Br. at 7-9.) Plaintiff, by contrast, takes the position that HUBZU's "Terms and Conditions" have no application here, because her claims do not arise from any agreement with HUBZU and because she received no notice of the provision. (Pl.'s Transfer Opp'n. at 3-5.)

    15. The "Terms and Conditions" imbedded within HUBZU's website include, on the twelfth page, a provision that "[a]ll parties agree that any and all disputes, brought in the United States, [and] <u>arising from [the] **use** of Hubzu</u> or its Affiliated Websites will be resolved solely through the Federal Courts in Georgia." (Ex. B to Britsch Dec. at § 17.9 (emphasis added).) The sole predicate for this litigation, however, concerns Plaintiff's position that Defendants agreed to sell her the disputed property in an email exchange between two real estate agents, and in a manner separate and apart from the HUBZU website. (<u>See</u> Compl. at ¶¶ 6-16.) Indeed, Plaintiff's theory of liability is premised upon her belief that Defendants should have placed her "email bid" on equal footing to bids placed through the HUZBU website, and her position that the allegedly differential treatment resulted from unlawful conduct. (<u>See generally id.</u>) In that way, resolution of this action requires inquiry into individual conduct without any connection to Plaintiff's "use" of the HUBZU website. (<u>See generally id.</u>) As

a result, the Court cannot conclude that this dispute falls within the ambit of the forum selection clause.[10]  The Court therefore turns to whether the general transfer inquiry favors the transfer of this action.

16. **Section 1404(a) Factors**.[11]  In evaluating the propriety of transfer under 28 U.S.C. § 1404(a), courts consider "a wide range of public and private interests." Yocham v. Novartis Pharm. Corp., 565 F. Supp. 2d 554, 557 (D.N.J. 2008).  As to the private interests, courts specifically consider:

> [1] plaintiff's forum preference; [2] whether the claim arose elsewhere; [3] the convenience of the parties; [4] the convenience of the witnesses; and [5] the location of books and records.

---

[10] Moreover, even if it did, the present record creates significant doubt concerning whether Plaintiff received sufficient notice of the forum selection provision.  Indeed, although Defendants argue that HUBZU's website "prominently" displayed HUBZU's "Terms and Conditions" (Defs.' Transfer Br. at 7), the website itself contains only a hyperlink to the "Terms and Conditions." (Ex. A to Britsch Dec. ("By clicking on Register, you accept the Terms & Conditions and PRIVACY Rights of Hubzu.").)  The forum selection clause then hides deep within the single-spaced provisions, under the heading "Disputes" and on the second to last page (of 13).  (Ex. B to Britsch Dec. at § 17.9.)  Even at this preliminary stage, these circumstances do not favor enforcement.  See, e.g., Selective Way Ins. Co. v. Glasstech, Inc., No. 14-3457, 2014 WL 6629629, at *5-*6 (D.N.J. Nov. 21, 2014) (declining to enforce a forum selection clause, based upon "critical questions" concerning its enforceability); Jordan Acquisition Grp., LLC v. Adam Techs., Inc., No. 09-542, 2009 WL 2473987, at *6 (W.D. Pa. Aug. 12, 2009) (citing Marek v. Marpan II, Inc., 817 F.2d 242 (3d Cir. 1987)) (finding that a forum selection clause must be "reasonably communicated" in order to be enforceable).
[11] In diversity cases, federal law governs the effect to be given contractual forum selection clauses.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995).

14

See Jumara, 55 F.3d at 879 (citations omitted). The public interest factors, in turn, include:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] relative court congestion; [4] the local interest, if any, in deciding local controversies at home; [5] the public policies of the fora; and [6] the relative familiarity of the trial judge with the applicable law.

See id. at 879-80 (citations omitted). Nevertheless, given the paramount importance of the plaintiff's chosen forum, its choice will rarely be disturbed "unless the balance of interest[s]" strongly favor transfer. Reed v. Weeks Marine, Inc., 166 F. Supp. 2d 1052, 1057 (E.D. Pa. 2001) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947)); see also Yang v. Odom, 409 F. Supp. 2d 599, 604 (D.N.J. 2006).

17. The parties give little to no attention to the section 1404(a) factors. (See, e.g., Defs.' Transfer Br. at 10-11; Pl.'s Transfer Opp'n (no discussion); Defs.' Transfer Reply (no discussion).) Nevertheless, the transfer analysis in this instance requires no complex inquiry, because the relevant considerations hardly tip strongly in favor of transfer.

18. **Private Interest Considerations**. As to the private interest factors, the Court notes that the principal fabric of this litigation—the Wildwood, New Jersey property—sits within this forum. (See generally Compl.) In that way, the critical predicate for this action centers upon this forum, and the

conduct of Plaintiff's New Jersey real estate agent.  As a result, this action appears to present a controversy with roots concentrated mostly within this forum.  See Jumara, 55 F.3d at 879 (finding that "local controversies" should be decided "at home").  The State of Georgia, by contrast, has a more tenuous connection to this action, as only the home of HUBZU and Mr. Sweeney, the REALHome real estate agent.  (See generally id.) Even so, however, all of the foreign defendants (and their agents) plainly conduct business within this forum, and requiring them to defend their forum-based activities here certainly works no serious inconvenience.  Under these circumstances, the Court finds that the private interest factors weigh against transfer.  See Ferratex, Inc. v. U.S. Sewer & Drain, Inc., ___ F. Supp. 3d ____, No. 14-7527, 2015 WL 4642157, at *8 (D.N.J. Aug. 4, 2015) (finding, under similar facts, that the private interest factors weighed, on balance, against transfer); Yocham v. Novartis Pharm. Corp., 565 F. Supp. 2d 554, 558-59 (D.N.J. 2008) (finding, under similar facts, that the private interest factors "weigh[ed] strongly against transferring the case"); Selective Way Ins. Co., 2014 WL 6629629, at *7 (same).

    19.  **Public Interest Considerations**.  Nor can the Court conclude that the public interest considerations support transfer.  Yocham, 565 F. Supp. 2d at 559.  Indeed, the parties

do not dispute that New Jersey law governs Plaintiff's claims, and that this New Jersey federal Court possesses greater familiarity with that applicable law.  Even more, because this action concerns tortious conduct that allegedly occurred in this State, New Jersey possesses a significant public policy interest in resolving this dispute.  See Selective Way Ins. Co., 2014 WL 6629629, at *7 (citations omitted) (noting New Jersey's "significant public policy" in resolving such disputes); Demodulation, Inc. v. Applied DNA Sciences, Inc., No. 11-0296, 2011 WL 6756069, at *4 (D.N.J. Dec. 22, 2011) (same); Springfield v. Honeywell Int'l, Inc., No. 11-1829, 2011 WL 2600739, at *3 (D.N.J. June 29, 2011) (same).  Finally, although a consideration, "'relative congestion of the respective courts' dockets'" has minimal importance in the overall transfer inquiry, and cannot be considered conclusive here.[12]  Yocham, 565

---

[12] The Court recognizes the disparity between the median time to disposition of a civil case by trial in the Northern District of Georgia (26.6 months) and the median time to disposition by trial in this District (36.3 months).  See Table C-5, Administrative Office of the United States Courts, Statistical Tables for the Federal Judiciary, available at http://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2015/06/30.  Nevertheless, because both Districts resolve relatively few cases by trial, the median time to disposition for all cases, not just trials, provides the more relevant measure of court congestion and speed to resolution of the average case.  The median time to disposition for all cases differs only slightly between this District (7.8 months) and the Northern District of Georgia (6.7 months) for the period ending June 30, 2015.  See id.  Even with this slight disparity, however, it cannot said that the Northern District of Georgia

F. Supp. 2d at 560 (citation omitted).  Given these circumstances, the Court cannot conclude that a transfer to the Northern District of Georgia advances the public interest.

  20. An accompanying Order will be entered.


 **December 18, 2015**             **s/ Jerome B. Simandle**
Date                    JEROME B. SIMANDLE
                       Chief U.S. District Judge

---

would dispose of this litigation faster than this District, particularly with the parties marching dutifully towards a December 21, 2015 Initial Scheduling Conference.